ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Monday, October 30, 2017 8:15:32 PM
CASE NUMBER: 2017 CV 05095 Docket ID: 31503519
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

# IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
## CIVIL DIVISION

| | | |
|---|---|---|
| **RLFSHOP, LLC**<br>**6530 Poe Avenue**<br>**Vandalia, OH 45414** | : | |
| | : | |
|     **and** | : | **CASE NO.:** |
| **Robert L. Folkerth**<br>**6530 Poe Avenue**<br>**Vandalia, OH 45414** | : | |
| | : | |
| **vs.** | : | |
| **AMERICAN EXPRESS COMPANY**<br>**c/o CT Corp.**<br>**1300 E 9th Street**<br> **Cleveland, Ohio 44114** | : | |
| | : | **Judge:** |
| **and** | : | |
| | : | |
| **PAYPAL, INC.**<br>**c/o CT Corporation System**<br>**4400 Easton Commons Way**<br>**Suite 125**<br>**Columbus, Ohio 43219** | : | **COMPLAINT** |
| | : | |
| **and** | : | |
| **WESLEY POWELL**<br>**6871 Rockview Ct.**<br>**Huber Heights, Ohio 45424** | : | **JURY DEMAND ENDORSED**<br>**HEREON** |
| | : | |
| **and** | : | |
| **DORTHY C. POWELL**<br>**aka DOROTHY C. POWELL**<br>**1769 Rustic Woods Drive**<br>**Huber Heights, Ohio 45424** | : | |
| | : | |
|     **Defendants.** | | |

NOW COME the plaintiffs, RLFShop, LLC d/b/a Shopsmith ("Shopsmith") and Robert L. Folkerth, and for their Complaint against the Defendants Wesley Powell, Dorthy C. Powell aka Dorothy C. Powell, PayPal, Inc. ("PayPal") and American Express Company ("AMEX"), set forth the following averments and allegations, to-wit:

**PARTIES, JURISDICTION & VENUE**

1.      Shopsmith is a for profit Ohio limited liability company with its principal place of business in Montgomery County, Ohio.  Shopsmith is engaged in the business of manufacturing and selling certain woodworking tools and accessories, including the famous Shopsmith Mark V multipurpose woodworking system.

2.      Mr. Folkerth is the principal owner and the manager of Shopsmith, is responsible for the day-to-day operations of the company, and is the holder of the credit card account subject of this dispute.

3.      Mr. Powell is a former employee of Shopsmith and a principal instigator of the fraudulent activities subject of this Complaint.  At all times relevant hereto, Mr. Powell is a resident of Montgomery County, Ohio.

4.      Ms. Powell is Mr. Powell's mother, and a co-conspirator with Mr. Powell in connection with the fraudulent activities subject of this Complaint, as well as a beneficiary of Mr. Powell's fraudulent activities.  At all times relevant hereto, Ms. Powell is a resident of Montgomery County, Ohio.

5.      Upon information and belief, PayPal is corporation organized under the laws of Delaware, and is licensed to transact business in Ohio as a foreign for profit corporation.  PayPal is in the business of providing on-line business services and related activities.

6.      Upon information and belief, AMEX is a corporation organized under the laws of New York, and is licensed to transact business in Ohio as a foreign for profit corporation.  AMEX is in the business of providing credit card services and related activities.

7.      This action arises under the laws of the United States, including 15 U.S.C. § 1643, and the state of Ohio with respect to common law claims asserted herein.  Jurisdiction of this Court is predicated on R.C. §§ 2305.01 and 2307.382.  Venue is proper in this Court pursuant to Civil Rules 3(B)(3) and 3(B)(6), as activities conducted by the Defendants that gave rise to this action occurred in Montgomery County, Ohio, and claims for relief against Defendants arose in Montgomery County, Ohio.

**BASIS OF DISPUTE**

8.      Shopsmith was formed in 2009 for the purpose of acquiring the assets of Shopsmith, Inc. including the right to use the "Shopsmith" tradename.  At the time of the asset acquisition, Shopsmith hired Mr. Powell, and other former employees of Shopsmith, Inc. to work at Shopsmith. Mr. Powell was primarily assigned IT department responsibilities, providing computer maintenance and support and related services.  Mr. Powell was a highly trusted employee, having previously worked at Shopsmith, Inc. for many years.

9.      Mr. Powell's duties included providing technical support, maintenance and administration for Shopsmith's computer software, hardware, and Internet operations, such as the purchase and maintenance of domain names supporting Shopsmith's web-based marketing activities.  Over the years, Mr. Powell was assigned additional duties, including responsibilities for the purchase of

certain materials and supplies in connection with Shopsmith's manufacturing and distribution operations, in addition to purchases involving the IT department.

10.    For convenience and to provide direct financial support for Shopsmith's business operations, Mr. Folkerth permitted Mr. Powell and other Shopsmith employees with purchasing responsibilities to use AMEX credit cards issued under his AMEX credit card account (hereinafter, the "AMEX credit card"). Employees were authorized to use the AMEX credit card for the limited purpose of purchasing services, materials and supplies for Shopsmith. Per Shopsmith policy, Mr. Powell was prohibited from using the AMEX credit card for personal use.

11.    In order to monitor employee use of the AMEX credit card, Shopsmith maintained certain financial controls and procedures. Shopsmith primarily relied upon the AMEX billing statements, which were carefully scrutinized to confirm that the credit card purchases were made on behalf of Shopsmith for approved services, materials and products from companies having an established business relationship with Shopsmith. Depending upon the type and amount of the purchase transaction, financial controls could also include requiring purchase orders, invoices or receipts in support of the transactions, which were reconciled by the accounting department with the AMEX billing statement.

12.    Unbeknown to Shopsmith, sometime after Mr. Powell started using the AMEX credit card he began making fictitious purchases for his personal benefit. After making the fictitious purchases, Mr. Powell then converted the proceeds of those purchases to his personal use. Mr. Powell was only able to make the fictitious AMEX credit card purchases and then convert the proceeds to himself by

engaging in a scheme of fraud and misrepresentation in partnership with Ms. Powell, and aided and abetted with the knowledge, cooperation and support of AMEX and PayPal, all for their mutual benefit and profit.

13.     Mr. Powell initiated the fraudulent scheme by opening PayPal accounts in his name and in Ms. Powell's name.  Mr. Powell then used the AMEX credit card to make fictitious purchases from Ms. Powell's PayPal account.  When Mr. Powell made the fictitious purchases, PayPal and AMEX permitted Mr. Powell to falsely record the seller ("Merchant") under the name of an established Shopsmith vender, instead of requiring him to correctly identify Ms. Powell as the Merchant. Although AMEX and PayPal reported sales of the products purchased with the AMEX credit card as being made from Ms. Powell's PayPal account, no goods or services were actually purchased or delivered.  After the proceeds of the fictitious sales were paid into Ms. Powell's PayPal account, Mr. Powell was then able to transfer the proceeds to his own PayPal account for distribution to himself and Ms. Powell.

14.     Despite that no actual sales took place, PayPal and AMEX processed Mr. Powell's fictitious AMEX credit card purchases, issuing transaction reports and billing statements for the fictitious purchases.  However, instead of recording Ms. Powell as the actual Merchant, PayPal and AMEX reported the established Shopsmith venders listed by Mr. Powell as the Merchants for transactions that never actually occurred.  Accordingly, AMEX sent billing statements to Mr. Folkerth and Shopsmith showing the date of purported AMEX credit card purchases, naming an established Shopsmith vender as the Merchant, identifying a product suitable for use by Shopsmith that as the product purportedly purchased, and stating the charge for the purchase, thereby deceiving Shopsmith

and Mr. Folkerth into believing that a legitimate credit card transaction with an established Shopsmith vender had taken place, as had been recorded on the AMEX billing statement.

15. At all times relevant hereto, AMEX and PayPal have purposefully and intentionally permitted AMEX account holders such as Mr. Powell to falsely identify the Merchants and products purchased through PayPal accounts. AMEX and PayPal have engaged in this practice, fully aware and knowing or with reckless disregard of the facts, that transaction reports and billing statements recording such purchases and sales effectively conceal the true identity of the Merchants and products purchased using PayPal accounts.

16. AMEX and PayPal have engaged in this practice, knowing or with reckless disregard to the fact that businesses and individuals paying for said credit card transactions, such as Shopsmith and Mr. Folkerth, rely upon the accuracy of AMEX billing statements when making credit card payments, and would be deceived by billing statements that falsely record the identity of the parties to transactions and the products purchased, thereby approving payment for such purchases under the belief that the purchases were authorized and made for a legitimate business purpose.

17. Mr. Folkerth entered into a contract with AMEX for the use of the AMEX credit card, whereby AMEX made certain representations and warranties with respect to the processing and reporting of credit card transactions. Mr. Folkerth and Shopsmith relied upon AMEX to use reasonable care to prevent fraud and to assure that credit card purchases were accurately recorded, and that billing statements reporting credit card purchases correctly reflected the identity of the parties to the credit card purchases and the products subject of the credit card purchases. Pursuant

to the contract with AMEX, Mr. Folkerth and Shopsmith entered into a special relationship with AMEX and those doing business with AMEX, surrendering substantial control over the processing and reporting of credit card purchases, relying upon AMEX to use reasonable care to assure that credit card purchases are properly conducted and accurately recorded.

18.     Upon information and belief, AMEX has a contractual relationship with PayPal authorizing PayPal to process and report AMEX credit card payments for purchases made through PayPal accounts.  AMEX entered into the contract knowing or with reckless disregard to the fact that PayPal permits PayPal account holders to falsely identify the parties to transactions and products purchased through PayPal accounts, so as to deceive the credit card account holders as to the substance of the actual transaction reported.  AMEX requires credit cardholders such as Mr. Folkerth and Shopsmith to pay for credit card purchases made through PayPal accounts, knowing that PayPal permits transaction reports recording purchases made through PayPal accounts to be manipulated so as to effectively conceal the true identity of the Merchants and products purchased using PayPal accounts, thereby enabling fraudulent credit card transactions.

19.     AMEX and PayPal know that credit cardholders paying for credit card purchases made through PayPal accounts, such as Shopsmith and Mr. Folkerth, rely upon the accuracy of transaction reports and billing statements recording said credit card purchases, and would be deceived by billing statements that falsely record the identity of the parties to transactions and the products purchased. AMEX and PayPal know that credit cardholders, such as Shopsmith and Mr. Folkerth, authorize and approve the use of credit cards and pay for credit card purchases under the belief and in reliance that the AMEX and PayPal transaction reports and billing statements accurately identify the Merchants

and products purchased as listed therein, so as to determine that the credit card purchases are authorized and were made for a legitimate business purpose.

20.     AMEX and PayPal receive fees for credit card credit card transactions made by their account holders and have a pecuniary interest in facilitating credit card purchases. By permitting Mr. Powell and Ms. Powell to falsely identify Merchants and products subject of fictitious credit card transactions, PayPal and AMEX enabled Mr. Powell and Ms. Powell to defraud Mr. Folkerth and Shopsmith, deceiving Mr. Folkerth and Shopsmith into believing that credit card purchases had been made from legitimate, established Shopsmith vendors in payment for products routinely purchased by Shopsmith. PayPal and AMEX have the means and knew or should have known that Mr. Powell and Ms. Powell were engaging in fictitious credit card transactions, that no actual purchases had been made, and that the true recipients of the credit card payments for the credit card purchases listed on the PayPal and AMEX statements were Mr. Powell and Ms. Powell.

21.     In accordance with Shopsmith financial control procedures, AMEX credit card purchases were reconciled with AMEX billing statements and invoices or other internal documents (later found to have been forged by Mr. Powell) recording the purchases. Relying upon the accuracy of the AMEX billing statements, Mr. Folkerth and Shopsmith paid for Mr. Powell's fictitious credit card transactions, though no goods or services were ever delivered as a result, and Mr. Folkerth and Shopsmith received no benefit therefrom.

22.     Based upon the false information provided in the AMEX billing statements, Mr. Folkerth and Shopsmith approved the payment of the fraudulent credit card transactions that had been made by

Mr. Powell. Mr. Folkerth and Shopsmith continued to authorize and permit Mr. Powell to use the AMEX credit card to make purchases on behalf of Shopsmith, under the belief that he was making legitimate credit card purchases on behalf of Shopsmith. During the years Mr. Powell used the AMEX credit card to make fictitious purchases, Mr. Folkerth and Shopsmith paid in excess of $400,000.00 in fraudulent credit card charges.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

23.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 23 of this Complaint as if fully set forth herein, and further state that:

24.     AMEX entered into a certain contract with Mr. Folkerth to issue the AMEX credit card and provide certain credit card services. To induce Mr. Folkerth to enter into the contract and to continue to use the credit card and authorize Shopsmith employees to use the credit card, AMEX warranted and Mr. Folkerth relied upon AMEX to use reasonable care to prevent fraud. Additional AMEX contractual obligations and warranties include but are not limited to taking reasonable precautions to assure that credit card transactions reported by AMEX actually took place, and that AMEX billing statements reporting credit card purchases accurately reflected the identity of bona fide Merchants involved in the credit card purchases and the products purchased with AMEX the credit card.

25.     As credit card providers and processors of credit card transactions, AMEX and PayPal have entered into contractual relationships between themselves and others with respect to the use of AMEX credit cards, with the intention that AMEX credit card account holders benefit from the terms of these contracts. These terms include requirements that PayPal take reasonable precautions to

avoid credit card fraud, assure the identity of the parties to credit card transactions, comply with laws pertaining to credit card use, and provide protections to credit card account holders as required by law. AMEX imposes these requirements for the specific benefit and protection of AMEX credit card account holders such as Mr. Folkerth, who rely and depend upon the protections provided to them by these agreements and warranties.

26. At all relevant times hereto, Mr. Folkerth and Shopsmith fully and faithfully performed all conditions precedent in accordance with the terms and conditions of the contract. Upon learning of the fraudulent credit charges, Mr. Folkerth reported the fraudulent credit card transactions to AMEX, requesting reimbursement for payments made as a result of the fraudulent credit card charges. In breach of contract and the warranties AMEX made in conjunction with the contract, AMEX knowingly and intentionally processed fraudulent credit charges, failed to provide accurate billing statements, misrepresented the identity of the Merchants and products sold in connection with the fraudulent credit card charges, and thereafter failed to reimburse Mr. Folkerth and Shopsmith for the fraudulent credit charges.

27. As a direct and proximate result of AMEX's breach of contract and warranties, Mr. Folkerth and Shopsmith have paid AMEX in excess of $400,000.00 in fraudulent credit card charges. Accordingly, Mr. Folkerth and Shopsmith have been damaged in an amount not yet ascertained but in excess of $400,000.00, and are entitled to recovery thereof from AMEX, plus prejudgment and post judgment interest, expenses and costs herein expended, and reimbursement for reasonable attorney fees incurred.

28.     In breach of the contracts between AMEX and PayPal and PayPal's warranties thereunder, PayPal failed to take reasonable precautions to avoid credit card fraud, correctly identify the Merchants and confirm the existence and legitimacy of credit card transactions processed through its accounts.  In breach of contract and the warranties with AMEX, PayPal knowingly and recklessly processed fraudulent credit charges, failed to provide accurate transaction statements, misrepresented the identity of the Merchants and products sold in connection with the fraudulent credit card charges, knowing that AMEX credit card holders such as Mr. Folkerth were relying upon PayPal to comply with its contractual obligations and warranties.

29.     Mr. Folkerth and Shopsmith are the intended and direct beneficiaries of the contract between AMEX and PayPal, and are entitled to recover for the breach of said contract.  As a direct and proximate result of PayPal's breach of contract and warranties, Mr. Folkerth and Shopsmith have paid in excess of $400,000.00 in fraudulent credit card charges.  Accordingly, Mr. Folkerth and Shopsmith are entitled to reimbursement and payment of the credit charges from AMEX and PayPal in an amount not yet fully ascertained but in excess of $400,000.00, g costs and expenses, plus prejudgment and post judgment interest and reimbursement for reasonable attorney fees incurred.

## SECOND CLAIM FOR RELIEF
### (Negligence)

30.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein, and further state that:

31.     As credit card providers and processors of credit card transactions, AMEX and PayPal exercise substantial control over the means and manner by which purchases and sales involving the

use of credit cards are conducted and recorded. AMEX and PayPal have entered into contractual relationships between themselves and others, including Mr. Folkerth and Shopsmith, requiring that Mr. Folkerth and Shopsmith to surrender direct examination of credit card transactions and rely upon information provided by AMEX and PayPal to ascertain the legitimacy of credit card transactions.

32.     In addition to contractual obligations, AMEX and PayPal are bound to comply with the laws pertaining to credit card use, and provide protections to credit card account holders as required by law. These legal obligations and the substantial control exercised by AMEX and PayPal over the means and manner of credit card transactions create a special relationship between AMEX, PayPal, and credit card account holders such as Mr. Folkerth and Shopsmith, imposing duties upon AMEX and PayPal to exercise reasonable care for the benefit of Mr. Folkerth and Shopsmith.

33.     In accordance with the legal and contractual relationships between the parties, AMEX and PayPal entered into a special relationship with Mr. Folkerth and Shopsmith as to the means and manner of AMEX credit card transactions and how those transactions are reported. Mr. Folkerth and Shopsmith surrendered to AMEX and PayPal substantial control over the processing and reporting of AMEX credit card transactions, relying upon AMEX and PayPal to use reasonable care to assure that credit card purchases are properly conducted and accurately reported. The special relationship between AMEX, PayPal and AMEX credit card holders such as Mr. Folkerth imposes a duty upon AMEX and PayPal to use reasonable care with respect to AMEX credit card transactions.

34.     AMEX and PayPal's duty of reasonable care includes but is not limited to the duty to assure that the credit card transactions reported by AMEX and PayPal actually took place. Furthermore,

the duty of reasonable care imposes upon AMEX and PayPal the obligation to assure that transaction reports and credit card statements issued by AMEX and PayPal accurately identify the Merchant of the product involved in credit card purchases, correctly identify the products purchased by credit card, and that the credit card purchases reflect actual transactions between the purchaser and bona fide Merchants of goods and services.

35.     In breach of the duty to exercise reasonable care, AMEX and PayPal permitted Mr. Powell to make fictitious credit card purchases using the AMEX credit card, and to misrepresent the identify Merchants and products subject of fictitious credit card transactions.  By failing to exercise reasonable care, PayPal and AMEX enabled Mr. Powell and Ms. Powell defraud Mr. Folkerth and Shopsmith, deceiving Mr. Folkerth and Shopsmith into believing that credit card purchases had been made from legitimate, established Shopsmith vendors in payment for products routinely purchased by Shopsmith.  PayPal and AMEX have the means and knew or should have known that Mr. Powell and Ms. Powell were engaging in fictitious credit card transactions, that no such products had been sold, and that the true recipients of the credit card payments for the credit card purchases listed on the PayPal and AMEX statements were Mr. Powell and Ms. Powell.

36.     Shopsmith and Mr. Folkerth carefully scrutinized the AMEX billing statements to confirm the credit card transactions reported therein were authorized and made for the benefit of Shopsmith. Mr. Folkerth and Shopsmith relied upon the AMEX billing statements to accurately report said credit card transactions, and were deceived by AMEX billing statements that falsely recorded the identity of the Merchants and the products purchased.  Shopsmith's and Mr. Folkerth's reliance upon the AMEX billing statements was reasonable and foreseeable.  AMEX and PayPal know that credit

cardholders, such as Shopsmith and Mr. Folkerth, authorize and approve of the use of credit cards and pay for credit card purchases under the belief and in reliance that the AMEX and PayPal transaction reports and billing statements accurately identify the Merchants and products purchased as listed therein, so as to determine that the credit card purchases recorded on the billing statements are authorized and were made for a legitimate business purpose.

37.    AMEX and PayPal have a duty to accurately report credit card transactions, correctly identifying the Merchants and products sold on the transaction reports and the billing statements provided to credit card account holders such as Mr. Folkerth and Shopsmith.  With malice, knowledge and reckless disregard of the known facts, AMEX and PayPal intentionally breached that duty by providing inaccurate transaction reports and billing statements, listing nonexistent Merchants and products for the credit card transactions reported therein for their own financial benefit. Shopsmith's and Mr. Folkerth's reliance upon the AMEX billing statements was reasonable and foreseeable.

38.    As a direct and proximate result of AMEX' s and PayPal's negligence, Mr. Folkerth and Shopsmith have paid in excess of $400,000.00 in fraudulent AMEX credit card charges. Accordingly, Mr. Folkerth and Shopsmith are entitled to recovery of compensatory and punitive damages from AMEX and PayPal in an amount not yet fully ascertained but in excess of $400,000.00, plus prejudgment and post judgment interest and costs herein expended, and payment for reasonable attorney fees incurred.

## THIRD CLAIM FOR RELIEF
### (Fraud)

39.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 38 of this Complaint as if fully set forth herein, and further state that:

40.     As credit card providers and processors of credit card transactions, AMEX and PayPal exercise substantial control over the means and manner by which purchases and sales involving the use of credit cards are conducted and recorded.  AMEX and PayPal issue transaction reports and billing statements recording credit card transactions, representing that the transaction reports correctly identify the Merchants and products involved in the credit card transactions.  AMEX and PayPal know and intend that the credit card account holders such as Mr. Folkerth and Shopsmith rely upon the accuracy of the information provided by AMEX and PayPal to detect fraud, verify that the use of the credit card was authorized and that payment should be approved.

41.     In accordance with the legal and contractual relationships between the parties, AMEX and PayPal entered into a special relationship with Mr. Folkerth as to the means and manner of AMEX credit card transactions and how those transactions are reported.  Mr. Folkerth and Shopsmith surrendered to AMEX and PayPal substantial control over the processing and reporting of AMEX credit card transactions, relying upon AMEX and PayPal to use reasonable care to assure that credit card purchases are properly conducted and accurately reported.  The special relationship between AMEX, PayPal and AMEX credit card holders such as Mr. Folkerth imposes a duty upon AMEX and PayPal to accurately disclose information regarding AMEX credit card transactions.

42.     AMEX and Paypal made representations in transaction reports and billing statements as to the identity of Merchants and products involved in AMEX credit card transactions, with the intention that Mr. Folkerth and Shopsmith would rely on the information provided to detect fraud, verify that the use of the credit card was authorized and issue payment for the credit card purchases.  With malice, knowledge and intentional, reckless disregard of the truth or falsity of the known facts, AMEX and PayPal misrepresented the identity of Merchants and products purchased using the AMEX credit card for their own financial benefit, knowing the information was material, and that Mr. Folkerth and Shopsmith would rely upon said misrepresentations to their detriment and to the benefit of AMEX and PayPal, thereby deceiving Mr. Folkerth and Shopsmith into believing that credit card purchases had been made from legitimate, established Shopsmith vendors in payment for products routinely purchased by Shopsmith.

43.     Mr. Powell, aided and abetted by Ms. Powell, AMEX and PayPal, engaged in a series of fictitious credit card purchases, falsely representing to Mr. Folkerth and Shopsmith that the AMEX credit card was used to make purchases of actual products sold by established Shopsmith venders for legitimate business reasons.  Said representations were made intentionally, maliciously, and with reckless disregard of the known facts, for the financial benefit of all the Defendants.  In reliance upon said representations, Shopsmith and Mr. Folkerth paid for the credit card transactions and continued to authorize Mr. Powell's use of the AMEX credit card.  At all times relevant hereto, Shopsmith's and Mr. Folkerth's reliance upon said representations was reasonable and foreseeable.

44.     With malice, knowledge, and reckless disregard of the truth or falsity of the known facts, the Defendants intentionally provided inaccurate transaction reports and billing statements, falsely

Page 16

representing the identity of the Merchants and products involved in the AMEX credit card transactions reported therein. Mr. Powell furthered the fraud by submitting to Shopsmith fictitious invoices and documents in support of the AMEX credit card transactions. As a direct and proximate result of Defendants fraudulent conduct, Mr. Folkerth and Shopsmith have paid in excess of $400,000.00 in fraudulent credit card charges. Accordingly, Shopsmith and Mr. Folkerth are entitled to recovery of compensatory and punitive damages from the Defendants in an amount not yet determined but in excess of $400,000.00, prejudgment and post judgment interest and costs herein expended, and reimbursement for reasonable attorney fees.

## FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

45.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 44 of this Complaint as if fully set forth herein, and further state that:

46.     As credit card providers and processors of credit card transactions, AMEX and PayPal are in the business of processing AMEX credit card purchases, sales and payments, and reporting these transactions to AMEX credit card account holders. AMEX and PayPal derive a pecuniary interest in each AMEX credit card transaction processed through PayPal accounts, receiving fees for each such transaction. AMEX and PayPal have entered into contractual relationships between themselves and others, including Mr. Folkerth and Shopsmith, requiring Mr. Folkerth and Shopsmith to surrender direct examination of the identity of Merchants involved in credit card transactions and rely upon the representations made by AMEX and PayPal to ascertain the Merchants from whom purchases are made and the legitimacy of credit card transactions.

Page 17

47.    AMEX and PayPal issued certain transaction reports and billing statements representing that established Shopsmith venders were the Merchants for the sale of products purchased with the AMEX credit card.  AMEX and PayPal knew, or in the exercise of reasonable care should have known that the information they provided to Mr. Folkerth and Shopsmith was false, and the credit card transactions reported by AMEX and PayPal were fictitious.  AMEX and PayPal failed to use reasonable care to assure that transaction reports and credit card statements issued by AMEX and PayPal accurately identified the Merchant selling the product involved in credit card purchases, correctly identify the products purchased with the credit card, and that the credit card purchases reflect actual transactions between the purchaser and bona fide Merchants.

48.    In breach of the duty to exercise reasonable care, AMEX and PayPal negligently misrepresented to Mr. Folkerth and Shopsmith the identify of Merchants and products subject of the fictitious credit card transactions.  PayPal and AMEX have the means and knew or should have known the correct identity of the Merchant subject of the AMEX credit card transactions and the fictitious nature of the credit card transactions. Mr. Folkerth and Shopsmith justifiably relied upon AMEX and PayPal's misrepresentations as set forth in AMEX's billing statements, and were thereby deceived into believing that AMEX credit card purchases had been made from legitimate, established Shopsmith vendors in payment for products routinely purchased by Shopsmith.

49.    AMEX and PayPal have a duty to accurately report credit card transactions, correctly identifying the Merchants and products sold on the transaction reports and billing statements provided to credit card account holders such as Mr. Folkerth and Shopsmith.  With malice, knowledge and reckless disregard, AMEX and PayPal negligently misrepresented credit card

transactions to Shopsmith and Mr. Folkerth, listing non existent Merchants and products for the credit card transactions reported therein for their own financial benefit. As a direct and proximate result of the negligent misrepresentations made by AMEX and PayPal, Mr. Folkerth and Shopsmith have paid in excess of $400,000.00 in fraudulent credit card charges. Accordingly, Mr. Folkerth and Shopsmith are entitled to recovery of compensatory and punitive damages from AMEX and PayPal in an amount not yet determined but in excess of $400,000.00, plus prejudgment and post judgment interest and costs herein expended, and reimbursement for reasonable attorney fees incurred.

### FIFTH CLAIM FOR RELIEF
### (Violation of the Truth In Lending Act)

50.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein, and further state that:

51.     Pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the AMEX credit card is an accepted credit card, and Mr. Folkerth is not liable for the unauthorized use of the AMEX credit card in excess of $50.00. At all times relevant hereto, Mr. Powell's use of the AMEX credit card to make fictitious credit card transactions was not authorized by Mr. Folkerth and Shopsmith. Mr. Powell's unauthorized use of the AMEX credit card occurred prior to when Mr. Folkerth and Shopsmith discovered that Mr. Powell's unauthorized use of the credit card had taken place and had notified AMEX that the unauthorized use had taken place.

52.     After Mr. Folkerth and Shopsmith discovered Mr. Powell's unauthorized use of the AMEX credit card, Mr. Folkerth notified AMEX and requested reimbursement of the unauthorized credit card charges. Initially, AMEX credited Mr. Folkerth's AMEX account for the unauthorized credit

Page 19

card charges reported by Mr. Folkerth.  However, AMEX subsequently reinstated the unauthorized credit charges in violation of the TILA and has refused to reimburse Mr. Folkerth and Shopsmith for AMEX credit payments made by Mr. Folkerth and Shopsmith as a result of Mr. Powell's unauthorized use of the AMEX credit card.

53.     Pursuant to the TILA, AMEX is obligated to reimburse Mr. Folkerth and Shopsmith for payments made by Mr. Folkerth and Shopsmith as a result of Mr. Powell's unauthorized use of the AMEX credit card, in accordance with the terms of the TILA.  Mr. Folkerth and Shopsmith have paid in excess of $400,000.00 in fraudulent credit card charges.  In violation of the TILA, AMEX has refused to reimburse Mr. Folkerth and Shopsmith for those payments.  As the direct and proximate cause of AMES's violation of the TILA, Mr. Folkerth and Shopsmith have incurred damages and are entitled to recovery from AMEX an amount not yet fully determined but in excess of $400,000.00, plus prejudgment and post judgment interest and costs herein expended, and for reasonable attorney fees hereby incurred.

## SIXTH CLAIM FOR RELIEF
### (Conversion)

53.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein, and further state that:

54.     Over a period of years, Mr. Folkerth and Shopsmith paid to AMEX over $400,000.00 in unauthorized credit card charges.  After Mr. Folkerth and Shopsmith discovered Mr. Powell's unauthorized use of the AMEX credit card, Mr. Folkerth notified AMEX and requested that AMEX reimburse him for the unauthorized credit card charges.  Initially, AMEX credited Mr. Folkerth's

AMEX account for the unauthorized credit card charges reported by Mr. Folkerth. However, AMEX subsequently reinstated the unauthorized credit charges and has refused to reimburse Mr. Folkerth and Shopsmith for AMEX credit payments made by Mr. Folkerth and Shopsmith in connection with Mr. Powell's unauthorized use of the AMEX credit card.

55.     At all times relevant hereto, Mr. Folkerth and Shopsmith are the rightful owners of the payments made to AMEX for fraudulent credit card transactions. Mr. Folkerth and Shopsmith have notified AMEX that the AMEX credit card transactions are fictitious, fraudulent and unauthorized, have demanded that AMEX return said payments, and AMEX has wrongfully refused, thereby converting the property of Mr. Folkerth and Shopsmith. As a direct and proximate result of AMEX's conversion of said credit card payments, Mr. Folkerth and Shopsmith have incurred damages and are entitled to recovery of compensatory and punitive damages from AMEX in an amount not yet determined but in excess of $400,000.00, plus prejudgment and post judgment interest and costs herein expended, and reimbursement for reasonable attorney fees incurred.

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

56.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein, and further state that:

57.     Over a period of years, Mr. Folkerth and Shopsmith have paid to AMEX and PayPal in excess of $400,000.00 in unauthorized and fraudulent credit card charges, conferring a benefit upon AMEX and PayPal. Mr. Powell and Ms. Powell converted the unauthorized and fraudulent credit card charges to their personal benefit. At all times relevant hereto, AMEX and PayPal knew or

should have known that said credit charges were unauthorized and fraudulent, and knowingly accepted the benefit of fees derived from said fraudulent credit card charges.

58.     Mr. Folkerth and Shopsmith notified AMEX that the AMEX credit card transactions are fictitious, fraudulent and unauthorized, have demanded that AMEX return said payments, and AMEX has wrongfully refused said demand, thereby retaining the benefit. As a direct and proximate result of said credit card payments, AMEX and PayPal have been unjustly enriched. Accordingly, Mr. Folkerth and Shopsmith have incurred damages and are entitled to recovery of compensatory and punitive damages from AMEX and PayPal in an amount not yet determined but in excess of $400,000.00, plus prejudgment and post judgment interest and costs herein expended, and reimbursement for reasonable attorney fees incurred.

**EIGHTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty)**

59.     Shopsmith and Mr. Folkerth incorporate the facts and allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein, and further state that:

57.     As an employee of Shopsmith, Mr. Powell owed Shopsmith a fiduciary duty of trust in his conduct of business on behalf of Shopsmith. In breach of that fiduciary duty of trust, Mr. Powell engaged unauthorized and fraudulent credit card transactions using the AMEX credit card for his personal benefit. As a direct and proximate result of Mr. Powell's breach of his fiduciary duty of trust, Mr. Folkerth and Shopsmith have paid in excess of $400,000.00 in fraudulent credit card charges for nonexistent goods and services. Accordingly, Mr. Folkerth and Shopsmith have incurred damages and are entitled to the recovery of compensatory and punitive damages from Mr. Powell

Page 22

in an amount not yet determined but in excess of $400,000.00, plus prejudgment and post judgment interest and costs herein expended, and reimbursement for reasonable attorney fees incurred.

Respectfully Submitted,

FOLKERTH + ROUTH LLC

/s/ John R. Folkerth, Jr.
John R. Folkerth, Jr. (0016366)
Trial Attorneys for Plaintiffs
109 North Main Street
500 Performance Place
Dayton, Ohio 45402
(937) 260-4200 (telephone)
(9sy) 260-4201 (facsimile)
jfolkerth@folkerthlaw.com

## JURY DEMAND

Now come the Plaintiffs, Robert L. Folkerth and RLFShop LLC, and pursuant to Civil Rule 38 hereby demand a trial by jury herein.

/s/ John R. Folkerth, Jr.
John R. Folkerth, Jr. (0016366)