# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RLFSHOP, LLC, *et al.*, | : | Case No. 3:17-cv-405 |
| | : | |
| Plaintiffs, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| AMERICAN EXPRESS COMPANY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

## ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (DOC. 4) OF DEFENDANT PAYPAL, INC.

---

This case is before the Court on the Motion to Dismiss (Doc. 4) filed by Defendant Paypal, Inc. ("PayPal"). Plaintiffs RLFShop, LLC d/b/a Shopsmith ("Shopsmith") and Robert L. Folkerth ("Folkerth") (collectively, "Plaintiffs") allege that Defendants American Express Company ("American Express") and PayPal are liable for fraudulent purchases made by one of Plaintiffs' former employees on a company American Express card through PayPal's platform. PayPal denies the Plaintiffs' allegations and moves to dismiss all of their claims under Fed. R. Civ. P. 12(b)(6). Plaintiffs oppose PayPal's Motion to Dismiss, which is fully briefed and ripe for review. (*See* Docs. 10, 17.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

## I.    BACKGROUND

As alleged in the Complaint, Shopsmith is in the business of manufacturing and selling woodworking tools and accessories. (Doc. 2 at ¶ 1.) As Shopsmith's principal

owner and manager, Folkerth is responsible for the company's day-to-day operations. (*Id.* at ¶ 2.) Folkerth is also the holder of the American Express credit card account at the center of this lawsuit. (*Id.*)

In 2009, after acquiring the assets of a separate company called Shopsmith, Inc., Shopsmith hired Defendant Wesley Powell ("Mr. Powell"), one of Shopsmith, Inc.'s former employees. (*Id.* at ¶ 8.) Mr. Powell was primarily assigned IT department responsibilities, providing computer maintenance and support and related services. (*Id.*) Over the years, Mr. Powell was assigned responsibility for the purchase of certain materials and supplies in connection with Shopsmith's manufacturing and distribution operations, in addition to purchases involving the IT department. (*Id.* at ¶ 9.)

For convenience and to provide "direct financial support" for Shopsmith's business operations, Folkerth permitted Mr. Powell and other Shopsmith employees with purchasing responsibilities to use American Express credit cards issued under Folkerth's American Express credit card account. (*Id.* at ¶ 10.) Employees were not authorized to use the credits cards for personal use; rather, they were authorized only for the limited purpose of purchasing services, materials and supplies for Shopsmith. (*Id.*)

Shopsmith maintained financial controls and procedures to monitor employee use of the American Express credit cards. (*Id.* at ¶ 11.) Shopsmith relied primarily upon its review of American Express's billing statements to identify unauthorized purchases. (*Id.*) Shopsmith scrutinized the billing statement to confirm that credit card purchases were for approved services, materials and products from companies with which it had an established relationship. (*Id.*) Financial controls might also include requiring purchase

orders, invoices or receipts in support of transactions, which were the accounting department then reconciled against the American Express billing statements.  (*Id.*)

At some point, Mr. Powell began using his company credit card to make "fictitious purchases" for his personal benefit.  (*Id.* at ¶ 12.)  These purchases appeared to be purchases of authorized goods and services from known vendors, but, in reality, they were purchases from accounts created by Mr. Powell for the purposes of defrauding Shopsmith.

Mr. Powell initiated this scheme by opening PayPal accounts in his name and in his mother's name, Dorthy, aka Dorothy, Powell ("Ms. Powell").  (*Id.* at ¶ 13.)  Mr. Powell then used his company American Express card to purchase non-existent, fictitious goods and services from Ms. Powell's PayPal account.  (*Id.*)  When Mr. Powell made these purchases, he was able to falsely record the name of the seller of the fictitious goods as an established Shopsmith vendor, instead of his mother.  (*Id.*)  After Shopsmith's payments for the fictitious goods were deposited into Ms. Powell's PayPal account, Mr. Powell transferred the funds to his own PayPal account for distribution to himself and Ms. Powell.  (*Id.*)  Using this scheme, Mr. Powell allegedly stole more than $400,000 from Shopsmith through fraudulent credit card charges.  (*Id.* at ¶ 22.)

American Express and PayPal issued transaction reports and billing statements that showed the fictitious purchases in the same manner as genuine purchases.  These records also displayed the false information input by Mr. Powell, instead of showing that the fictitious goods were sold by (and Shopsmith's monies were paid into) Ms. Powell's PayPal account.  Accordingly, American Express sent billing statements to Folkerth at

Shopsmith showing the date of purported credit card purchases, naming an established Shopsmith vendor as the merchant, identifying a product suitable for use by Shopsmith as the product purchased, and stating the charge for the purchase. (*Id.* at ¶ 14.) As a result, Folkerth's review of American Express's billing statements did not alert him to Mr. Powell's fraudulent purchases. (*Id.*)

Folkerth entered into a contract with American Express for the use of his credit card, which contained certain representations and warranties regarding the processing and reporting of credit cards. (*Id.* at ¶ 17.) Plaintiffs also allege, upon information and belief, that American Express and PayPal entered into an agreement authorizing PayPal to process and report American Express credit card payments for purchases made through PayPal accounts. (*Id.* at ¶ 18.) These contracts form the basis of several of Plaintiffs' claims.

On October 30, 2017, Plaintiffs brought this action against American Express and PayPal in the Montgomery County Court of Common Pleas. On December 1, 2017, PayPal removed the action to this Court pursuant to its federal question jurisdiction. In the Complaint, Plaintiffs allege against PayPal claims for breach of contract, negligence, fraud, negligent misrepresentation, and unjust enrichment. PayPal moves to dismiss all of the claims against it for failure to state a claim as a matter of law.

## II.   LEGAL STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this Rule "does not require 'detailed factual allegations' . . . it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (2009), quoting *Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55. "The Court need not accept as true, however, a legal conclusion couched as factual allegations." *Id*. If Plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. ANALYSIS

### A. Plaintiffs' Claim for Breach of Contract

Plaintiffs' breach-of-contract claim against PayPal is based on an alleged contract between American Express and PayPal "with respect to the use of AMEX credit cards, with the intention that AMEX credit card account holders benefit from the terms of these contracts." (Doc. 2 at ¶ 25.) Plaintiffs allege that the contract's terms include "requirements that PayPal take reasonable precautions to avoid credit card fraud, assure

the identity of the parties to credit card transactions, comply with laws pertaining to credit card use, and provide protections to credit card account holders as required by law." (*Id.*) Plaintiffs allege that American Express imposed these requirements on PayPal for the specific benefit and protection of its account holders, like Folkerth. (*Id.*)

Plaintiffs allege that PayPal breached its contract with American Express by failing to take "reasonable precautions to avoid credit card fraud, correctly identify the Merchants and confirm the existence and legitimacy of credit card transactions processed through its accounts." (*Id.* at ¶ 28.) Plaintiffs further allege that PayPal recklessly processed fraudulent credit card charges, failed to provide accurate transaction statements, and misrepresented the identify of merchants and products sold in connection with fraudulent charges. (*Id.*)

The parties agree that Plaintiffs' breach-of-contract claim is based on a third-party beneficiary theory of liability. PayPal argues, however, that this claim nonetheless fails because Plaintiffs do not allege that they were specifically intended beneficiaries of the contract between American Express and PayPal.

Under Ohio law, in order to state a breach-of-contract claim as a third-party beneficiary, the plaintiff must allege that a promisee under the contract specifically intended for him to benefit from the contract. *Laverick v. Children's Hosp. Medical Center of Akron, Inc.*, 43 Ohio App. 3d 201, 204, 540 N.E.2d 305 (9th Dist. 1988); *see also Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980). Ohio law applies the aptly named "intent to benefit" test to determine whether a third party is an intended beneficiary who can bring suit or only an incidental beneficiary with no enforceable rights

under the contract. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988). Under this test, "if the promisee * * * intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract." *Norfolk*, 641 F.2d at 1208. Conversely, "[i]f the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract." *Id.* The "mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract is insufficient; the performance of the promise must also satisfy a duty owed by the promisee to the beneficiary." *Id.*

The "intent to benefit" test sets a high bar for plaintiffs seeking to assert rights as a third-party beneficiary. In *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856 (6th Cir. 2002), for example, the Sixth Circuit observed that it was not sufficient to allege that a promisee had an "ancillary intention" to confer benefits on the third party to state a claim under Ohio law. *Id.* at 863. Instead, "[i]n order that a third person may enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person." *Id.* (quoting *Hines v. Amole*, 4 Ohio App.3d 263, 448 N.E.2d 473, 479 (Ohio Ct. App. 1982)). The third person need not be directly named in the contract, but an "incidental or indirect benefit to a third party is not sufficient to provide the third party with a cause of action." *Alexander v. Motorists Mut. Ins. Co.*, 2012-Ohio-3911, ¶ 27.

PayPal cites several cases in which courts have found that a plaintiff was not a third-party beneficiary under a contract. The most compelling cases that the Court has

reviewed, however, were decided on summary judgment or at trial after review of the contract in question. *See, e.g.*, *Huff v. FirstEnergy Corp.*, 2011-Ohio-5083, ¶ 14, 130 Ohio St. 3d 196, 201, 957 N.E.2d 3, 7 (affirming summary judgment for defendant on breach-of-contract claim where review of contract did not create genuine issue of fact regarding whether plaintiffs were intended beneficiaries); *Fed. Ins. Co. v. Fredericks*, 2015-Ohio-694, ¶ 51, 29 N.E.3d 313, 326 (affirming trial court's finding of no liability on third-party beneficiary theory where subcontract extended no benefits to plaintiff); *Alexander*, 2012-Ohio-3911, ¶ 26 (affirming summary judgment for defendant on alleged third-party beneficiary's breach-of-contract claim where nothing in the language of the contract indicated plaintiff was an intended beneficiary); *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 864 (6th Cir. 2002) (affirming summary judgment for defendant on breach-of-contract claim where it was "clear that the specific provision in the contract mentioning [plaintiff] was not entered into for [plaintiff's] benefit").

Here, Plaintiffs have alleged that they are intended beneficiaries under a contract between American Express and PayPal. Plaintiffs specifically allege that PayPal is required to take certain actions under the contract to protect American Express account holders, like Plaintiffs. (Doc. 2 at ¶ 25.) The Court must accept these factual allegations as true. Because the contract is expressly identified in the Complaint, PayPal could have submitted it for the Court's review in consideration of its Motion to Dismiss. The Court then might have been in a position to evaluate whether Plaintiffs' allegations concerning the contract's terms are plausible. Without the contract, the Court has only Plaintiffs' allegations regarding its contents. Construing these factual allegations in the light most

favorable to Plaintiffs, they state a claim for relief.  It is plausible that, in exchange for its account holders' business, a credit card company might require service providers to take certain precautions to protect those account holders.  For this reason, at this stage of the case, the Court must deny PayPal's Motion to Dismiss Plaintiffs' breach-of-contract claim.

## B. <u>Plaintiffs' Claim for Negligence</u>

To state a claim for negligence, the Complaint must contain factual allegations showing the existence of a duty owed to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach.  *Jeffers v. Olexo*, 43 Ohio St. 3d 140, 142, 539 N.E.2d 614 (1989).  "[T]he existence of a duty depends upon the foreseeability of harm; if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied."  *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23.

PayPal moves to dismiss Plaintiffs' negligence claim on the grounds that the Complaint does not allege facts showing the existence of any duty owed to Plaintiffs and that Plaintiffs are not permitted to bring a claim in tort against PayPal under the economic loss doctrine.  (Doc. 4 at 6 (citing *Corporex Dev. & Constr. Mgmt., Inc. v. Shook*, Inc., 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6).)

As the Supreme Court of Ohio explained in *Shook*:

The economic-loss rule generally prevents recovery in tort of damages for purely economic loss.  *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 45, 537 N.E.2d 624; *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206. "'[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'"  *Chemtrol*, 42 Ohio

St.3d at 44, 537 N.E.2d 624, quoting *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.* (Iowa 1984), 345 N.W.2d 124, 126.  *See, also, Floor Craft*, 54 Ohio St.3d at 3, 560 N.E.2d 206.  This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that "parties to a commercial transaction should remain free to govern their own affairs." *Chemtrol*, 42 Ohio St.3d at 42, 537 N.E.2d 624.  *See also, Floor Craft*, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.* (1988), 236 Va. 419, 425, 374 S.E.2d 55.  "'Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.  That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.'"  *Floor Craft*, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d 55.

*Shook*, 2005-Ohio-5409, ¶ 6.

Plaintiffs acknowledge the economic loss doctrine, but argue that an exception to that doctrine applies where the duty of care arises independent of the contract at issue. They contend that PayPal's duty arose from its "special relationship" with Folkerth and Shopsmith "as to the means and manner of AMEX credit card transactions and how those transactions are reported."  (Doc. 2 at ¶ 33.)  Specifically, Plaintiffs argue that the duty of care arises as a result of PayPal's exercise of substantial control over the credit card purchases involving Plaintiffs' credit card accounts and the foreseeability of harm to Plaintiffs arising from their relationship with PayPal.  (Doc. 10 at 6-7 (citing *Federal Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St. 3d 171, 174).)

Plaintiffs contend other jurisdictions have found the existence of a duty of care in connection with financial transactions.  (*Id.* at 7 (citing *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 194, 194 (M.D. Penn. 2005); *FleetBoston Fin. Corp. v. Advanta Corp.*, No. CIV. A. 16912-NC, 2003 WL 240885, at *34 (Del. Ch. Jan. 22, 2003); *Merrick Bank*

*Corp. v. Valley Nat'l Bank*, No. CV 13-7756, 2017 WL 5951583, at *6 (D.N.J. Nov. 30, 2017);

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016). As noted by PayPal, however, *Sovereign Bank* actually supports PayPal's Motion to Dismiss and the other cases cited by Plaintiffs are distinguishable on their facts.

*Sovereign Bank* stemmed from the breach of a retailer's computer system and consequent theft of credit card information belonging to Sovereign Bank's customers. Sovereign Bank brought a negligence claim against the retailer and Fifth Third Bank, which processed the retailer's credit card transactions. 395 F. Supp. 2d at 187. The district court held that Sovereign Bank had a sufficient relationship with the retailer to support the existence of a duty and therefore a negligence claim. As to Fifth Third Bank, however, the district court found that the economic loss doctrine precluded a negligence claim. *Id.* at 203-05. Under the applicable Pennsylvania law, there were two rationales for the economic loss doctrine: (1) the "putative tortfeasor could not foresee the harm," and (2) "public policy dictated a limitation on the right of recovery in negligence for economic losses." *Id.* at 204. As a matter of public policy, Pennsylvania courts had determined that permitting anyone "in the economic chain" to sue for purely financial losses would overly burden the economic system. *Id.* This public policy rationale provided an independent basis for application of the doctrine, even if harm to Sovereign Bank was foreseeable. Here, PayPal's relationship with Plaintiffs is more analogous to Sovereign Bank's relationship with Fifth Third Bank than its relationship with the retailer.

In *Advanta*, the parties' dispute arose out of the acquisition of a consumer credit card business. *Advanta Corp.*, 2003 WL 240885, at \*1. The acquiring corporation, referred to as "Fleet", sued the selling corporation, called "Advanta", for damages. Advanta asserted counterclaims and the case was tried to the court. Among the counterclaims, Advanta asserted a negligent interference claim based on Fleet's solicitation of Advanta's business card customers. Considering whether Fleet owed any duty to Advanta, the Delaware Court of Chancery found that Advanta had "surrendered substantial control over certain of its business card customer accounts" to Fleet under an interim services agreement. 2003 WL 240885, at \*34 (Del. Ch. Jan. 22, 2003). Pursuant to the agreement, Fleet processed payments for Advanta and had access to its proprietary customer information, including information about its business card customers. *Id.* This special relationship was sufficient to impose a duty on Fleet not to negligently interfere with Advanta's business. In contrast, in the instant case, Plaintiffs do not allege that they gave PayPal unfettered access to their proprietary information. In addition, Plaintiffs had a direct relationship with American Express, not PayPal.

In *Merrick Bank*, a bank was accused of negligently mismanaging an escrow account. 2017 WL 5951583, at \*1. The escrow account held funds from the purchase of airline tickets, which were to be used to refund passengers for cancelled flights. The airline failed and, due to mismanagement of the escrow account, many passengers never received their refunds. The district court considered several factors in finding that the bank had a duty of care in its management of the escrow account, including "the risk, the foreseeability, or the likelihood of injury all weighed against the social utility of the actor's

conduct, the opportunity and ability to exercise care to prevent the injury and the consequences of placing the burden of the duty on the actor." *Id.* at *6 (quoting *J.S. v. R.T.H.*, 155 N.J. 330, 337, 714 A.2d 924, 928 (1998)). The district court found the risk to the airline's customers plainly foreseeable—if there was no money in the escrow account, customers could not be reimbursed. It further recognized the escrow account as the only recourse for customers who paid by check for their tickets.

The district court distinguished New Jersey caselaw holding banks had no duty to a third party. *Id.* (citing cases). In some of those cases, the bank had an ancillary role, such as cashing a check, in a fraudulent scheme perpetrated by someone else. *See Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 407 (2009) (bank did not owe duty to victim of identity theft who was incarcerated after importer used victim's identity to cash fraudulent checks); *City Check Cashing, Inc. v. Manufacturers Hanover Trust Co.*, 166 N.J. 49, 62 (2001) (bank had no duty of care to the plaintiff, a check cashing service, when the bank incorrectly verified the authenticity of a check); *Penn. Nat'l Turf Club, Inc. v. Bank of West Jersey*, 385 A.2d 932, 934 (N.J. App. Div. 1978), cert. denied, 77 N.J. 506 (1978) (dismissing negligence claim where bank deviated from good banking practices by failing to dishonor a depositor's returned checks within midnight deadline required by the Uniform Commercial Code). None of the cited cases involved mismanagement of an escrow account. The district court found imposition of a duty was also consistent with fairness and policy considerations because it would protect consumers from financial loss in the case of a flight operator's insolvency. *Id.* at *7.

Returning to this case, the relationship between Plaintiffs and PayPal is different from the relationship between the airline customers and the bank managing the airline's escrow account in *Merrick Bank*. PayPal was not responsible for holding funds against which Plaintiffs might have a claim. Nor did PayPal represent the only recourse for Plaintiffs to obtain refunds for the fictitious goods purchased by Mr. Powell. PayPal has more in common with the banks in the caselaw distinguished by the district court in *Merrick Bank*. Like those banks, PayPal processed a transaction in which someone else, here the Powells, allegedly defrauded Plaintiffs.

Plaintiffs also rely on *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016). In that case, the district court held that a negligence claim could proceed against Home Depot where it stored customers' credit card information, which was subsequently stolen. *Id.* at *3-4. The district court reasoned, "A retailer's actions and inactions, such as disabling security features and ignoring warning signs of a data breach, are sufficient to show that the retailer caused foreseeable harm to a plaintiff and therefore owed a duty in tort." *Id.* at *3. Here, PayPal was not the retailer and did not interact directly with Plaintiffs.

In sum, Plaintiffs do not allege the kind of special relationship that would impose a duty of care on PayPal, even under the caselaw cited by Plaintiffs.

Plaintiffs also argue, however, that PayPal is liable based upon its violation of statutory enactments, which would constitute negligence per se. (Doc. 10 at 8 (citing *Chambers v. St. Mary's Sch.* (1998), 82 Ohio St. 3d 563, 565; *Thornton v. State Farm Mut. Auto Ins. Co.*, 2006 U.S. Dist. LEXIS 83968, *43 (N.D. Ohio 2006).) Plaintiffs specifically argue

that PayPal violated section 5 of the Federal Trade Commission ("FTC") Act, 15, U.S.C. § 45(a), and the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code § 4165.02(A)(1) and (2).

Section 5 of the FTC Act is the basic consumer protection statute enforced by the Federal Trade Commission. Section 5 prohibits "unfair or deceptive acts and practices in or affecting commerce." 15 U.S.C. § 45(a)(1). PayPal argues that Section 5 is inapplicable because it applies only to unfair or deceptive acts directed toward consumers. (Doc. 17 at 5, citing *FTC v. OMICS Grp. Inc.*, 2017 U.S. Dist. Lexis 161910, *5 (D. Nev. Sep. 29, 2017) and https://www.ftc.gov/about-ftc/what-we-do/enforcement-authority.) PayPal reasons that Plaintiffs—a business (Shopsmith) and its owner (Folkerth)—are not consumers and, therefore, no violation of Section 5 is alleged.

Plaintiffs cite *FTC v. Inc21.com Corp.*, 745 F.Supp. 2d 975 (N.D. Cal. 2010) for the standard for proving deceptive billing practices in violation of Section 5 of the FTC Act. In that case, the defendants billed consumers for internet-based products and services by placing monthly charges on their telephone bills. *Id.* at 1000. On the parties' motions for summary judgment, the district court noted that, under Section 5, "[a]n act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" *Id.* (quoting *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)). The district court found undisputed evidence established that nearly 97 percent of the defendants' customers had not agreed to purchase the products for which they were billed. In addition, the court found that placement of the charges on

consumer telephone bills constituted an affirmative representation that the consumers had in fact authorized the purchases. *Id.* The representation was material because it involved "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* at 1001, (quoting *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir.2006)).

Among other arguments, the *Inc21.com* defendants argued that they subjectively believed their customers had authorized the charges on their telephone bills. The district court dismissed this argument, however, observing that defendants' subjective belief was immaterial to liability under Section 5—which turns on only whether a reasonable consumer was likely to be misled. *Id.* at 1003 (citing *Gill*, 265 F.3d at 950). The district court dismissed defendants' other arguments and granted summary judgment for the FTC on the claim.

Even construing the Complaint's allegations in the light most favorable to Plaintiffs, they have not alleged a violation of Section 5 of the FTC Act. This is because the Complaint does not contain factual allegations about how consumers, or the public generally, perceived, and therefore would have been misled by, the PayPal account used to execute the Powells' alleged fraudulent scheme. Instead, Plaintiffs allege that a business and its principal were deceived by the intentional fraud committed by an employee. Moreover, Plaintiffs allege that they were deceived because they could not detect the fraud in their American Express billing statement. There is no indication that a consumer, interacting directly with the fraudulent PayPal account, would have been fooled into believing that the account actually belonged to a legitimate business.

As to the ODTPA, to establish a claim, a party must demonstrate an intent to engage in deception or unfairly compete. *Olde Towne Windows v. Baker*, 96 Ohio App. 3d 204, 205 (Ohio 6th Dist. 1994) (dismissal of ODTPA claim proper where plaintiff failed to present facts which would establish intent to deceive). Plaintiffs do not allege that PayPal acted with an intent to deceive, but that PayPal was negligent in permitting others to act with such intent. Plaintiffs' negligence per se theory of liability therefore also fails.

The Court grants the Motion to Dismiss Plaintiffs' negligence claim.

### C. <u>Plaintiffs' Claim for Fraud</u>

Under Ohio law, a well-pled claim for fraud alleges: "(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, ¶ 27, 125 Ohio St. 3d 494, 501. In addition, under Fed. R. Civ. P. 9(b), a plaintiff must allege "with particularity the circumstances constituting fraud or mistake." "So long as a relator pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

PayPal argues that Plaintiffs' claim for fraud must be dismissed because the Complaint does not allege PayPal made any representations to Plaintiffs and fails to

plead the details of any alleged fraudulent statements with the particularity required by Rule 9(b). In response, Plaintiffs persuasively argue that the Complaint meets the particularity requirements of Rule 9(b), but fail to address the argument that their allegations, even if sufficiently detailed, do not state a cause of action under Ohio law. (Doc. 10 at 9-11, citing, *inter alia*, *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).)

This Court has previously recognized that, under Ohio law, "[a] party may not be held liable for fraudulent acts in which he does not participate, or for false representations which were neither induced by him nor made with his knowledge." *Firestone v. Galbreath*, 747 F. Supp. 1556, 1569–70 (S.D. Ohio 1990) (citing *Klein v. Equitable Life Assurance Soc.*, 17 Ohio App.3d 50, 477 N.E.2d 1190 (1984)), aff'd in relevant part, 976 F.2d 279 (6th Cir. 1992), certified question answered, 67 Ohio St. 3d 87, 616 N.E.2d 202 (1993), and aff'd in part, rev'd in part, 25 F.3d 323 (6th Cir. 1994). A party may be held liable, however, if it or someone with authority to act on its behalf procures the fraud. *Klein*, 477 N.E.2d at 1193; *see also Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 381–82, 738 N.E.2d 842, 853 (2000).

Here, at most, the Complaint alleges that PayPal knowingly permitted the Powells to misidentify the seller in the fraudulent transactions they charged to Plaintiffs' American Express account. (Doc. 2 at ¶ 13.) Such allegations do not amount to participating in the fraud in a manner for which PayPal may be held liable under Ohio law. Plaintiffs have not offered any rebuttal to this argument. Their fraud claim is therefore dismissed.

### D. **Plaintiffs' Claim for Negligent Misrepresentation**

In order to state a claim for negligent misrepresentation under Ohio law, a plaintiff must allege facts establishing that the defendant had "a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." *425 Beecher, LLC v. Unizan Bank*, 186 Ohio App.3d 214, 2010-Ohio-412, 927 N.E.2d 46, ¶ 51 (10th Dist.); *accord Ford v. New Century Mtge. Corp.*, 797 F.Supp.2d 862, 872 (N.D. Ohio 2011) ("A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction."). As discussed above, Plaintiffs have not alleged a special relationship that would give rise to such a duty. In addition, Plaintiffs allege a misrepresentation by the Powells, not a misrepresentation by PayPal. For these reasons, Plaintiffs' negligent misrepresentation claim must be dismissed.

### E. **Plaintiffs' Claim for Unjust Enrichment**

Plaintiffs' claim for unjust enrichment against PayPal is based "upon PayPal having received fees for each fraudulent credit card transaction that PayPal processed through PayPal's account, knowing (or with reckless disregard of the truth) that the credit card transactions were fraudulent." (Doc. 10 at 13, citing Doc. 2 at ¶¶ 20, 46, 57.) PayPal argues that, despite Plaintiffs' assertion, the Complaint is devoid of facts showing that PayPal retained any of the alleged unauthorized credit card charges or any other benefit from Plaintiffs. PayPal also suggests that it would not be unjust to permit PayPal to retain

any funds because Plaintiffs failed to examine their billing statements to discover the Powell's fraud.  In other words, Plaintiffs are to blame for their losses, not PayPal.

A claim for unjust enrichment has three elements: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.  *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860 (6th Cir.2002).  A plaintiff is not required to allege an injury in excess of the harm inherent in the defendant's unjust retention of the benefit.  *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 836 (S.D. Ohio 2003).

Plaintiffs have alleged that they conferred a benefit on PayPal through the payment of transaction fees via their American Express account.  They have also sufficiently alleged that PayPal had knowledge of its receipt of this benefit.  The only issue is whether Plaintiffs allege the third element—that PayPal's retention of this benefit would be unjust under the circumstances.  PayPal has not cited any caselaw supporting its contention that Plaintiffs' allegations are insufficient as a matter of law to state a claim for unjust enrichment.  Rather, the question of whether retention of a benefit would be unjust is a mixed question of fact and law—a question difficult to rule upon at the pleading stage without apposite, binding precedent.  For this reason, the Court denies the motion to dismiss Plaintiffs' unjust enrichment claim.

## IV.    <u>CONCLUSION</u>

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** PayPal's Motion to Dismiss (Doc. 4).   Plaintiffs' negligence, fraud and negligent misrepresentation claims are **DISMISSED**.  Plaintiffs' other claims shall proceed.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, August 23, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE