# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RLFSHOP, LLC, *et al.*, | : | Case No. 3:17-cv-405 |
| Plaintiffs, | : | Judge Thomas M. Rose |
| v. | : | |
| AMERICAN EXPRESS COMPANY, *et al.*, | : | |
| Defendants. | : | |

## ENTRY AND ORDER GRANTING MOTION TO DISMISS (DOC. 26) OF DEFENDANT AMERICAN EXPRESS NATIONAL BANK

This case is before the Court on the Motion to Dismiss (Doc. 26) filed by Defendant American Express National Bank ("AMEX").[1] Plaintiffs RLFShop, LLC d/b/a Shopsmith ("Shopsmith") and Robert L. Folkerth ("Folkerth") (collectively, "Plaintiffs") allege that AMEX and PayPal are liable for fraudulent purchases made by one of Plaintiffs' former employees on a company AMEX credit card through PayPal's platform. AMEX denies Plaintiffs' allegations and moves to dismiss all of their claims under Fed. R. Civ. P. 12(b)(6). Plaintiffs oppose the Motion to Dismiss, which is fully briefed and ripe for review. (*See* Docs. 26, 31, 32.) For the reasons below, the Court **GRANTS** the Motion to Dismiss in its entirety.

---

[1] AMEX states that it is improperly named "American Express Company" in the Complaint. Plaintiffs do not dispute the assertion that American Express National Bank is the proper defendant.

I.   BACKGROUND

As alleged in the Complaint, Shopsmith is in the business of manufacturing and selling woodworking tools and accessories. (Doc. 2 at ¶ 1.) As Shopsmith's principal owner and manager, Folkerth is responsible for the company's day-to-day operations. (*Id.* at ¶ 2.) Folkerth is also the holder of the AMEX credit card account at the center of this lawsuit. (*Id.*)

In 2009, after acquiring the assets of a separate company called Shopsmith, Inc., Shopsmith hired Defendant Wesley Powell ("Mr. Powell"), one of Shopsmith, Inc.'s former employees. (*Id.* at ¶ 8.) Mr. Powell was primarily assigned IT department responsibilities, providing computer maintenance and support and related services. (*Id.*) Over the years, Mr. Powell was assigned responsibility for the purchase of certain materials and supplies in connection with Shopsmith's manufacturing and distribution operations, in addition to purchases involving the IT department. (*Id.* at ¶ 9.)

For convenience and to provide "direct financial support" for Shopsmith's business operations, Folkerth permitted Mr. Powell and other Shopsmith employees with purchasing responsibilities to use AMEX credit cards issued under Folkerth's AMEX credit card account. (*Id.* at ¶ 10.) Employees were not authorized to use the credits cards for personal use; rather, they were authorized only for the limited purpose of purchasing services, materials and supplies for Shopsmith. (*Id.*)

Shopsmith maintained financial controls and procedures to monitor employee use of the AMEX credit cards. (*Id.* at ¶ 11.) Shopsmith relied primarily upon its review

of AMEX's billing statements to identify unauthorized purchases. (*Id*.) Shopsmith scrutinized the billing statement to confirm that credit card purchases were for approved services, materials and products from companies with which it had an established relationship. (*Id*.) Financial controls might also include requiring purchase orders, invoices or receipts in support of transactions, which the accounting department reconciled against the AMEX billing statements. (*Id*.)

At some point, Mr. Powell began using his company credit card to make "fictitious purchases" for his personal benefit. (*Id.* at ¶ 12.) These purchases appeared to be purchases of authorized goods and services from known vendors, but, in reality, they were purchases from accounts created by Mr. Powell for the purposes of defrauding Shopsmith.

Mr. Powell initiated this scheme by opening PayPal accounts in his name and in his mother's name, Dorthy, aka Dorothy, Powell ("Ms. Powell"). (*Id.* at ¶ 13.) Mr. Powell then used his company AMEX card to purchase non-existent, fictitious goods and services from Ms. Powell's PayPal account. (*Id.*) When Mr. Powell made these purchases, he was able to falsely record the name of the seller of the fictitious goods as an established Shopsmith vendor instead of his mother. (*Id.*) After Shopsmith's payments for the fictitious goods were deposited into Ms. Powell's PayPal account, Mr. Powell transferred the funds to his own PayPal account for distribution to himself and Ms. Powell. (*Id.*) Using this scheme, Mr. Powell allegedly stole more than $400,000 from Shopsmith through fraudulent credit card charges. (*Id.* at ¶ 22.)

AMEX and PayPal issued transaction reports and billing statements that showed the fictitious purchases in the same manner as genuine purchases. These records also displayed the false information input by Mr. Powell, instead of showing that the fictitious goods were sold by (and Shopsmith's monies were paid into) Ms. Powell's PayPal account. Accordingly, AMEX sent billing statements to Folkerth at Shopsmith showing the date of purported credit card purchases, naming an established Shopsmith vendor as the merchant, identifying a product suitable for use by Shopsmith as the product purchased, and stating the charge for the purchase. (*Id.* at ¶ 14.) As a result, Folkerth's review of AMEX's billing statements did not alert him to Mr. Powell's fraudulent purchases. (*Id.*)

Folkerth entered into a contract with AMEX for the use of his credit card, which contained certain representations and warranties regarding the processing and reporting of credit cards. (*Id.* at ¶ 17.) Plaintiffs also allege, upon information and belief, that AMEX and PayPal entered into an agreement authorizing PayPal to process and report AMEX credit card payments for purchases made through PayPal accounts. (*Id*. at ¶ 18.) These contracts form the basis of several of Plaintiffs' claims.

On October 30, 2017, Plaintiffs brought this action against AMEX and PayPal in the Montgomery County Court of Common Pleas. On December 1, 2017, PayPal removed the action to this Court pursuant to its federal question jurisdiction. Plaintiffs allege claims against AMEX for breach of contract, negligence, fraud, negligent misrepresentation, violation of the Truth in Lending Act, conversion and unjust

enrichment.  AMEX moves to dismiss all of the claims against it for failure to state a claim as a matter of law.

## II. LEGAL STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this Rule "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (2009), quoting *Twombly*, 550 U.S. 544, 547 (2007).  A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party.  *Twombly*, 550 U.S. at 554-55.  "The Court need not accept as true, however, a legal conclusion couched as factual allegations." *Id*.  If Plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

III. ANALYSIS

A. Shopsmith's Standing

AMEX argues that Shopsmith does not have standing to assert any of its purported claims because only Folkerth, as the named Cardmember, incurred liability or losses for the alleged fraudulent transactions. In response, Plaintiffs cite the Introduction in Part 2 of the Cardmember Agreement ("CMA"), which states:

> *We*, *us*, and *our* mean the issuer shown on page 1 of Part 1. *You* and *your* mean the person who applied for this Account and for whom we opened the Account. You and your also mean anyone who agrees to pay for this Account. You are the *Basic Cardmember*. You may request a card for an *Additional Cardmember* . . . .

(Doc. 26-1 at PAGEID # 161.)[2] Plaintiffs argue that the Court may reasonably infer from the Complaint that both Folkerth and Shopsmith paid for the charges to Folkerth's AMEX credit card account, and therefore Shopsmith is within the definition of the Basic Cardmember and a party to the CMA. Plaintiffs' argument is sufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6). Although the Complaint does not explicitly state that Shopsmith paid for charges to the AMEX account, it is reasonable to infer as much from the allegation that Shopsmith suffered financial damages due to Powell's fraudulent transactions.

Notwithstanding the fact that Shopsmith has standing, the Court still must address whether Plaintiffs have stated each of their claims against AMEX.

---

[2] AMEX attached the CMA to its Motion to Dismiss. The Court may consider the CMA in ruling on the Motion to Dismiss without converting it into a motion for summary judgment because the CMA is central to Plaintiffs' claims and expressly referenced in the Complaint. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

6

## B. Plaintiffs' Breach of Contract Claim Against AMEX

AMEX argues that Plaintiffs fail to allege a claim for breach of contract for two reasons. First, AMEX argues that Plaintiffs have failed to identify any contractual provision that AMEX breached. Second, it argues that Plaintiffs fail to allege compliance with the CMA's 60-day rule and card usage rules, which are conditions precedent to any of AMEX's obligations relating to disputed charges.

The CMA is governed by federal and Utah law. (Doc. 26-1 at PAGEID # 165.) "Under Utah law, to establish a breach of contract, a plaintiff must show: (1) the existence of a contract, (2) her performance of that contract, (3) breach of the contract by the other party, and (4) damages." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (citing *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001)).

Plaintiffs allege the existence of a contract—the CMA. They further allege that, in the CMA, AMEX "warranted . . . to use reasonable care to prevent fraud" and to take "reasonable precautions to assure that credit card transactions reported by AMEX actually took place, and that AMEX billing statements reporting credit card purchases accurately reflected the identity of bona fide Merchants involved in the credit card purchases and the products purchased with [the] AMEX [ . . . ] credit card." (Doc. 2 at ¶ 24.) In order for Plaintiffs' breach of contract claim to survive the Motion to Dismiss, however, they must identify where in the CMA these alleged contractual obligations appear.

Plaintiffs first argue that the CMA obliges them to pay only for charges "such as purchases, fees and interest charges." (Doc. 26-1 at PAGEID # 161 (defining "charge").)

Next, they cite the covenant of good faith and fair dealing, which is imposed in all contracts under Utah law. (Doc. 31 at 7, citing *Peterson & Simpson v. IHC Health Servs.*, 2009 UT 54, ¶ 21.) This covenant imposes an obligation on each party not to "intentionally or purposely do anything which will destroy or injure the other party's rights to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991). The legal duty imposed by the covenant is determined by assessing "whether a 'party's actions [are] consistent with the agreed common purpose and the justified expectations of the other party.'" *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43 (quoting *St. Benedict's*, 811 P.2d at 200). Plaintiffs reason that AMEX breached the implied covenant of good faith by failing to meet Plaintiffs' "justified expectation" that they only had to pay for charges resulting from a "bona fide transaction, such as an actual purchase." (Doc. 31 at 8.)

Plaintiffs' argument fails for at least two reasons. First, their interpretation of the CMA's definition of "charges" is not accurate. The CMA defines a "charge" as "any amount added to your Account, such as purchases, fees and interest charges." (Doc. 26-1 at PAGEID # 161.) The phrase "such as purchases, fees and interest charges" is not restrictive. It merely provides an example of the kinds of items that might be included in "any amount added to your Account." The phrase "[a]ny amount added to your Account" is broad enough to include Mr. Powell's unauthorized charges—subject, of course, to the agreement's other provisions regarding disputed charges. Second, the implied covenant of good faith does not require AMEX to take affirmative action; rather, it imposes an obligation not to purposely undermine Plaintiffs' contractual

8

rights. Plaintiffs might argue that AMEX breached the implied covenant by misrepresenting vendors' identities on Plaintiffs' credit card statements. Even reading the Complaint in the light most favorable to Plaintiffs, however, the Powells misrepresented the vendors' identities to Plaintiffs, not AMEX. AMEX reported the charges as they were reported to it. In sum, Plaintiffs fail to identify the provisions of the CMA that give rise to the contractual obligations alleged in the Complaint. As a result, they fail to state a breach of contract claim against AMEX.

AMEX argues that the breach of contract claim also should be dismissed because Plaintiffs do not allege their compliance with the CMA. Plaintiffs do allege that "[a]t all relevant times hereto, Mr. Folkerth and Shopsmith fully and faithfully performed all conditions precedent in accordance with the terms and conditions of the AMEX contract." (Doc. 2 at ¶ 26.) This is a legal conclusion, however, that the Court is not obliged to accept. *Twombly*, 550 U.S. at 554-55.

The CMA contains a procedure for disputing charges: If a cardmember "think[s] there is an error on [his] statement," it must contact American Express "[w]ithin 60 days after the error appeared on [the cardmember's] statement." (Doc. 26-1 at 8.) Again, later in the CMA, it states: "If you think your statement or receipt is wrong, . . . call or write us as soon as you can. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared." (*Id.* at 9.) AMEX refers to this dispute procedure as the 60-Day Rule in its memorandum. AMEX agreed to investigate a disputed charge that is timely reported. (*Id.* at 8-9.)

9

Plaintiffs have not alleged facts showing that they contacted AMEX to dispute any of the alleged fraudulent charges within 60 days of when they first appeared on their credit card statement. This is another reason why Plaintiffs fail to state a breach of contract claim. *See Maranville v. Utah Valley University*, 568 Fed. Appx. 571, 576 (10th Cir. June 16, 2014); *McCarthur v. State Farm Mut. Auto Ins. Co.*, 274 P.3d 981, 989 (Utah 2012).

Finally, Plaintiffs also suggest that they have alleged a breach of contract claim against AMEX based on the alleged AMEX-PayPal agreement. The Complaint does not contain such a claim. In the Complaint, Plaintiffs allege that PayPal, not AMEX, breached the AMEX-PayPal agreement. (Doc. 2 at ¶ 28.)

### C. Negligence Claim

AMEX argues that Plaintiffs' negligence claim is barred by the economic-loss doctrine and absence of any contract-independent duty. In response, Plaintiffs make the same arguments that they made in opposition to PayPal's Motion to Dismiss the negligence claim against it. (*Cf.* Doc. 31 at 10-14 and Doc. 10 at 4-9.) Plaintiffs' memorandum fails to show why the negligence claim against AMEX should not fail as did the claim against PayPal. As a result, for the same reasons discussed in the Court's prior Order, Plaintiffs fail to allege a special relationship with AMEX, independent of the CMA, that gives rise to any extra-contractual duty. (*See* Doc. 28 at 9-17.) The Court adds that Plaintiffs' assertion of negligence *per se* theories of liability are also subject to dismissal because they were not alleged in the Complaint. *General Electric Co. v. S&S Sales Co.*, 2012 WL 2921566, at *4 (N.D. Ohio July 17, 2012) ("It is axiomatic that a

complaint cannot be amended by briefs in opposition to a motion to dismiss") (citations omitted). The Court grants AMEX's Motion to Dismiss the negligence claim.

### D. Fraud Claim

AMEX argues that Plaintiffs' fraud claim should be dismissed because they fail to plead fraud with particularity or to identify any extra-contractual representations. As they did in response to PayPal's Motion to Dismiss, Plaintiffs argue only that they complied with their obligation to plead fraud with particularity under Federal Rule of Civil Procedure 9(b). They do not address AMEX's arguments that, even if they complied with Rule 9(b), they have not stated a claim for fraud under Ohio law.

In the Order granting in part PayPal's Motion to Dismiss, the Court held that Plaintiffs had not alleged facts showing that PayPal participated in the alleged fraud sufficient to expose it to a fraud claim. The Complaint also does not contain facts showing that AMEX participated in the alleged fraud. At most, AMEX is alleged to have failed to detect the fraudulent purchases made by the Powells.

AMEX's obligations to Plaintiffs are contained in the CMA. There is no extra-contractual duty alleged that could support Plaintiffs' fraud allegations against AMEX. The fraud claim is subject to dismissal for that reason as well. *See Issac v. Ebix, Inc.*, No. 2:11-CV-00450, 2012 WL 1020296, at *5 (S.D. Ohio Mar. 26, 2012); *Stalvey v. NVR, Inc.*, No. 1:10 CV 1729, 2011 WL 3472385, at *6-7 (N.D. Ohio Aug. 9, 2011); *Thornton v. Cangialosi*, No. 2:09-CV-585, 2010 WL 2162905, at *2 (S.D. Ohio May 26, 2010).

### E. Negligent Misrepresentation Claim

Plaintiffs' negligent misrepresentation claim is dismissed for the same reason as their fraud claim—the failure to allege facts giving rise to an extra-contractual duty. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1271-72 (Ohio Ct. App. 1996).

### F. The Truth in Lending Act

AMEX argues that Plaintiffs' claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., must be dismissed because (1) they failed to comply with the statute's 60-day reporting requirement and (2) the allegedly fraudulent transactions fall outside the one-year statute of limitations. AMEX assumes that Plaintiffs seek to recover on the theory that AMEX is liable for denial of Plaintiffs' "billing error" dispute under the Fair Credit Billing Act ("FCBA") within TILA. AMEX bases this assumption on Plaintiffs' reference to limiting Folkerth's liability to $50, which falls under subsection (e) of the "correction of billing errors" section of TILA, 15 U.S.C. § 1666(a)-(e). (Doc. 2 at ¶ 51 (alleging that under TILA "the AMEX credit card is an accepted credit card, and Mr. Folkerth is not liable for the unauthorized use of the AMEX credit card in excess of $50.00.")

In the Complaint, Plaintiffs do not specify which TILA provision AMEX allegedly violated. In response to the Motion to Dismiss, Plaintiffs do not contest AMEX's assumption, although, as discussed in greater detail below, they also assert a claim for unauthorized use of the AMEX credit card under 15 U.S.C. § 1643 of TILA.

Under the FCBA, in order to hold a creditor liable for a billing error, a plaintiff must have notified the creditor of that error "no later than 60 days after the creditor transmitted the *first periodic statement* that reflects the alleged billing error." *Langenfeld v. Chase Bank USA, N.A.*, 537 F.Supp.2d 1181, 1202-03 (N.D. Okla. 2008) (quoting 12 C.F.R. § 226.13(b)(1))(emphasis in original). Plaintiffs do not dispute that this 60-day reporting requirement applies to their TILA claim. Instead, they argue that the Complaint gives rise to a reasonable inference that "Plaintiffs' [sic] notified AMEX of the disputed charges within 60 days of the discovery that the charges reported on the credit card statement were fraudulent." (Doc. 31 at 20, citing *Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 915 (7th Cir. 2009) and *Permobil, Inc. v. Am. Exp. Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 836 (M.D. Tenn. 2008).) Plaintiffs' choice of words is important. They do not claim to have notified AMEX of the disputed charges within 60 days of AMEX's transmission of the billing statement that contained them. Plaintiffs allege to have notified AMEX within 60 days of their ***discovery*** of the disputed charges. When Plaintiffs discovered the disputed charges might be relevant to an argument regarding the statute of limitations under 15 U.S.C. § 1643, as discussed in *Asher*, but it is not relevant to whether Plaintiffs complied with the 60-day reporting requirement under the FCBA. More precisely, the authority cited by Plaintiffs does not establish such relevance. Accordingly, Plaintiffs' FCBA claim is dismissed for failure to allege compliance with the FCBA'S 60-day reporting requirement.

AMEX also argues that Plaintiffs have not alleged compliance with the FCBA's one-year statute of limitations. *See Burnstein v. Saks Fifth Ave. & Co.*, 208 F.Supp.2d 765,

775-76 (E.D. Mich. June 27, 2002) (FCBA claim barred for failure to bring suit within one-year statute of limitations). The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Generally, a plaintiff "need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed.R.Civ.P. 8(a) and *Jones v. Bock*, 549 U.S. 199, 216 (2007)). As a result, a Rule 12(b)(6) motion to dismiss, which considers only the complaint's allegations, is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo*, 676 F.3d at 547. Nevertheless, dismissal is proper at the pleading stage where the complaint's allegations affirmatively show that the claim is time-barred. *See Jones*, 549 U.S. at 215 ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"). Here, the Complaint does not contain sufficient factual allegations regarding the timing of events to determine if the statute of limitations has run.

As mentioned, Plaintiffs argue that they also allege a claim for unauthorized use of the AMEX credit card under Section 1643 of TILA. AMEX argues that any such claim should be dismissed because Section 1643 does not give Plaintiffs the right to sue for reimbursement of amounts already paid to AMEX for incurred charges. (Doc. 32 at 17, citing *Azur v. Chase Bank, USA*, 601 F.3d 212, 217 (3rd Cir. 2010).) In *Azur*, the plaintiff discovered that his personal assistant, to whom he had entrusted his finances, had fraudulently withdrawn over $1 million from his credit card over a seven-year period and paid off the card with funds from the plaintiff's own bank account. The plaintiff brought suit against the credit card issuer under Section 1643, seeking "reimbursement"

14

of the misappropriated funds. 601 F.3d at 214–15, 215 n.7, 217. Dismissing the claim, the Third Circuit held that the plaintiff's personal assistant had apparent authority to use his credit card so that the charges were not "unauthorized" within the meaning of Section 1643, and that, in any event, "§ 1643 ... does not provide the cardholder with a right to reimbursement." *Id*. at 217–18, 222.

The facts in *Azur* are analogous to the facts alleged in the Complaint here. Plaintiffs allege that Folkerth gave Mr. Powell actual authority to use his AMEX credit card. The charges therefore were not "unauthorized" within the meaning of the statute. *See* 15 U.S.C. § 1602(p) (defining unauthorized use as "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit"). Plaintiffs also allege that they paid the AMEX bills containing the disputed charges. They are therefore seeking reimbursement of monies paid, to which they have no right under Section 1643. *Azur*, 601 F.3d at 214–15, 217. To the extent that Plaintiffs also sought to allege a claim under Section 1643 of TILA, it is dismissed.

### G. Conversion

AMEX requests dismissal of Plaintiffs' conversion claim because the relevant transactions do not involve identifiable property and, in any event, AMEX did not retain any of the funds because they ended up with Mr. Powell. In response to these arguments, Plaintiffs recite the Complaint's allegations and refer, without explanation, to *Permobil, Inc. v. Am. Exp. Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 835–36 (M.D. Tenn. 2008).

The *Permobil* case involved Tennessee law and did not address the issue of whether a plaintiff must allege the existence of identifiable property to state a conversion claim. AMEX cited at least five Ohio cases supporting its position. *See RAE Assocs., Inc. v. Nexus Communications, Inc.*, 36 N.E.3d 757, 765-66 (Ohio Ct. App. 2015) (affirming dismissal of conversion claim because "[plaintiff] paid its print subscribers as invoiced, and then paid [defendant] his commission. . . . No earmarked or sequestered funds [were] involved"); *Dana Ltd. v. Aon Consulting, Inc.*, 984 F.Supp.2d 755, 769 (N.D. Ohio Nov. 22, 2013) (dismissing conversion claim based upon absence of "'specific segregated, identifiable money'" at issue) (citation omitted); *Macula v. Lawyers Title Insurance Corp.*, 2008 WL 3874686, at *5 (N.D. Ohio Aug. 14, 2008) (granting motion to dismiss conversion claim because plaintiffs "do not allege that the money paid to [defendant] was identifiable, or that[defendant] is obligated to return specific money (i.e., specific bills) to them"); *NPF IV, Inc. v. Transitional Health Services*, 922 F.Supp. 77, 82 (S.D. Ohio 1996) ("An action for conversion . . . requires that the defendant have an obligation to deliver specific money as opposed to merely a certain sum of money") (citation omitted); *see also Urbanek v. All State Home Mortgage Co.*, 898 N.E.2d 1015, 1022 (Ohio Ct. App. 2008) (affirming summary judgment on conversion claim because plaintiff did not demonstrate that defendants received the rent payments in question).

The Court grants AMEX's Motion to Dismiss the conversion claim for failure to allege the existence of specifically earmarked funds or that AMEX retained the funds in question.

### H. Unjust Enrichment

AMEX argues that Plaintiffs' unjust enrichment claim fails because the CMA governs their relationship and affords the sole remedy to Plaintiffs. (Doc. 26 at 17-18, citing, among others, *Davis & Tatera, Inc. v. Gray–Syracuse, Inc.*, 796 F. Supp. 1078, 1085 (S.D. Ohio 1992).) Plaintiffs argue that they are permitted to plead their breach of contract and unjust enrichment claims in the alternative and that it would inappropriate to dismiss the unjust enrichment claim until the Court can conclude that Plaintiffs' claims are entirely governed by the CMA. (Doc. 31 at 20, citing Fed. R. Civ. P. 8; *Kabealo v. J.E. Grote Co.*, 1994 Ohio App. LEXIS 3423, at *8 (Ohio Ct. App. Aug. 9, 1994); *Teknol, Inc. v. Buechel*, 1999 U.S. Dist. LEXIS 22017, *11 (S.D. Ohio).)

Plaintiffs are correct that "[a] party may set out 2 or more statements of a claim … alternatively or hypothetically …." Fed. R. Civ. P. 8(d)(2). As in the *Kabealo* case cited by Plaintiffs, for example, a plaintiff may pursue both a breach of contract claim and a quasi-contract theory where "[t}he record demonstrates that reasonable minds could reach different conclusions as to whether or not an express contract existed between these parties." *Kabealo*, 1994 Ohio App. LEXIS 3423 at *8. It makes sense that a plaintiff should be permitted to pursue alternate theories where the facts have not been established. Here, however, the existence of a contractual relationship between Plaintiffs and AMEX is not in dispute. It is alleged in the Complaint and AMEX has come forward with the CMA itself.

Upon review, the CMA governs the entire dispute between Plaintiffs and AMEX. "It is clearly the law in Ohio that an equitable action in quasi-contract for unjust

enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact. The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule." *Davis & Tatera, Inc.*, 796 F. Supp. at 1085 (quoting *Ryan v. Rival Mfg. Co.*, No. C–810032, 1981 WL 10160, at *1 (Hamilton Cty. Dec. 16, 1981))(internal quotes omitted). Plaintiffs' unjust enrichment claim against AMEX is dismissed.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** AMEX's Motion to Dismiss (Doc. 26) in its entirety. All of Plaintiffs' claims against AMEX are hereby **DISMISSED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, February 8, 2019.

s/Thomas M. Rose
———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE